Megwinoff & Lefranc & Co., demandantes y apelados, *v.* Sunland Biscuit Co., Inc., demandada y apelante.

Núm. 9434.—*Sometido:* Mayo 1, 1947. *Resuelto:* Junio 27, 1947.

*Luis López de Victoria,* abogado de la apelante; *Miranda & Miranda Esteve,* abogados de la apelada.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

El presente caso se originó en la Corte Municipal de San Juan mediante demanda radicada por Megwinoff & Lefranç & Co. contra la Sunland Biscuit Co., Inc. En ella se alega en síntesis que la demandante contrató con la demandada la instalación de un frigorífico en la fábrica de esta última en Hato Rey por el convenido precio de $1,000, de los cuales $500 serían pagados al comenzar el trabajo y $500 a la terminación del mismo; que la demandante comenzó el trabajo

y recibió de la demandada la suma de $500 y que al terminar el mismo en 5 de mayo de 1944 ésta se negó a pagarle la cantidad de $499 (*sic*), resto del precio del contrato, a pesar de las gestiones de cobro realizadas.

En su contestación a la demanda la Sunland Biscuit Co., Inc. alega que si bien es cierto que ella contrató con la demandante la instalación del referido frigorífico en el cuarto de fermentación de masas en su fábrica de galletas de Hato Rey, el contrato se hizo para ser instalado el frigorífico *dentro de un término razonable;* que ella entregó a la demandante $500 al formalizarse el contrato y que ésta negligentemente y no obstante los requerimientos hechos por la demandada no terminó de instalar el equipo hasta el mes de mayo de 1944 o sea hasta dos años dos meses y 28 días después de formalizarse el contrato. Por vía de reconvención alegó que cuando la demandante aceptó la orden ella sabía que dicho frigorífico se necesitaba urgentemente y que era parte del contrato su rápida instalación; que la demandante violó el contrato al tardar el tiempo que antes se ha indicado y a sabiendas de que con la tardanza incurrida se causaban a la demandada los siguientes daños: (1) limitación de producción de galletas en su fábrica; y (2) merma en el rendimiento por bulto de harina debido a las deficiencias en el proceso de fermentación, para lo cual era indispensable el frigorífico contratado; y que los daños sufridos por la demandada exceden de la suma de $5,000, pero para someterse a la jurisdicción de la Corte Municipal reducía su contrarreclamación a la suma de $499.

Tanto la corte municipal como la de Distrito de San Juan declararon con lugar la demanda y sin lugar la reconvención. De la sentencia dictada por la última se ha apelado ante nos por la demandada y en el alegato radicado se señalan tan sólo dos errores, siendo el primero de ellos que la corte inferior erró al resolver que la demandante apelada actuó diligente-

mente y de buena fe en el cumplimiento del contrato; y el segundo que dicha corte erró al declarar que no procede la reconvención de la demandada.

Una lectura cuidadosa de las alegaciones, de la prueba testifical y de la correspondencia cruzada entre las partes con relación al contrato por ellas celebrado, nos lleva al convencimiento de que no asiste la razón a la apelante. De todo ello se desprende que en 7 de febrero de 1942 los aquí litigantes celebraron un contrato a virtud del cual la demandante instalaría un equipo de aire acondicionado en la fábrica de la demandada en el barrio de Hato Rey, de Río Piedras, por el convenido precio de $1,000, a ser pagado en la siguiente forma: $500 al celebrarse el contrato y $500 al terminarse por la demandante la instalación del equipo. El precio acordado incluía la instalación total del equipo de refrigeración, más servicio sin costo por el período de un año. Los $500 iniciales fueron pagados por la demandada, y en carta dirigida por ésta a la demandante en 7 de febrero de 1942 ella hace constar "que de acuerdo con lo hablado, ustedes habrán pedido inmediatamente por correo aéreo a los Estados Unidos todo el material necesario y la maquinaria para proceder a la instalación del equipo *dentro del período más breve posible de tiempo.*" (Bastardillas nuestras.)

A esta carta contestó la demandante tres días más tarde que todo el material necesario para la instalación ya había sido ordenado por correo aéreo a Estados Unidos y que la demandada podía estar segura de que la instalación sería hecha lo antes posible. En 4 de junio siguiente insiste la demandada con la demandante en que ésta realice los mayores esfuerzos para conseguir el material que faltaba para poder hacer la instalación y un día después la demandante contesta que la única pieza que le faltaba para poder hacer la instalación lo era el compresor, el cual *"como ustedes ya saben se perdió en un hundimiento en la travesía de Nueva York a San Juan."* (Bastardillas nuestras.) Informa también la de-

mandante a la demandada que la orden por dicho compresor ha sido duplicada inmediatamente, pero que cuando el compresor ya estaba listo para salir de nuevo una orden de congelación la detuvo.

De las numerosas cartas que figuran en los autos se desprende además que las gestiones para obtener prioridad para el embarque de dicho compresor debían ser hechas por la demandada y que ésta así lo aceptó. Igualmente se infiere que el compresor no llegó a Puerto Rico hasta fines de mayo de 1943 y que debido al estado de guerra que entonces prevalecía no se podía hacer la instalación del equipo de aire acondicionado hasta que se obtuviera una nueva prioridad de la Junta de Producción de Guerra. Dicha prioridad no se consiguió por la demandada hasta poco antes del 29 de noviembre de 1943. En dicha fecha ella escribe a la demandante indicándole que ''el viernes pasado el suscribiente telefoneó a su oficina para informar al Sr. Megwinoff que habíamos recibido de Wáshington el permiso para la instalación en nuestra fábrica del equipo que ustedes nos detallaron en su carta de octubre 11 . . . Ya que ahora no existe ningún impedimento para terminar este contrato les agradeceremos mucho proceder a la instalación del equipo que nos ocupa.'' El mismo día la demandante escribe a la demandada diciéndole que esperaba poder empezar el trabajo de instalación durante la próxima semana, por lo cual agradecería a la demandada activara el asunto de la extensión de la prioridad. En 31 de enero de 1944 se dirige nuevamente la demandada a la demandante recordándole que ya la prioridad había sido recibida, que habían transcurrido cerca de dos meses y que le rogaba de nuevo procediera con el trabajo a la mayor brevedad posible. De los autos del caso no aparece que la demandante diera contestación a esta carta. Sin embargo, el 2 de marzo de 1944 la demandada se dirige una vez más a la demandante solicitando el cumplimiento del contrato e indicándole que *''si el miércoles próximo, día 8 del corriente,*

*ustedes no han empezado el trabajo contratado entregaremos el asunto a nuestros abogados para la acción pertinente."*

De la prueba testifical surge asimismo que el trabajo fué terminado allá para el 5 de mayo de 1944 y que la instalación del equipo según el testimonio incontrovertido de Iván Megwinoff, testigo de la demandante, tardó de 2 a 3 meses.

Aunque en el primer párrafo de la contestación se hace constar que "el contrato se hizo para ser instalado dicho frigorífico *dentro de un término razonable,"* daremos por sentado al igual que lo hicieron las partes en su correspondencia y la corte inferior en su opinión, que el entendido entre la demandante y la demandada fué que el equipo de refrigeración se entregaría a la Sunland Biscuit Co. *"dentro del período más breve posible de tiempo."* Así lo hizo constar la demandada en su carta a la demandante de 7 de febrero de 1942 y así se desprende de otras cartas cruzadas entre las partes. Ahora bien, tomando en consideración todo lo ocurrido en este caso, ¿debemos llegar a la conclusión de que el equipo de refrigeración fué instalado por Megwinoff & Lefranc & Co. en la fábrica que la demandada tiene en Hato Rey dentro del período más breve posible de tiempo? Esta pregunta debe contestarse afirmativamente.

De la prueba que hemos reseñado se desprende de manera irrefutable que la demandante ordenó todo el equipo de refrigeración por correo aéreo inmediatamente que se firmó el contrato y la demandada pagó los $500 requeridos como pago inicial; que si bien gran parte del equipo llegó prontamente a Puerto Rico, no ocurrió lo mismo con el compresor, que era tal vez la máquina principal requerida, toda vez que el barco que lo traía fué hundido mientras hacía la travesía de Estados Unidos a esta Isla y ya que al ordenarse inmediatamente un duplicado del mismo vino una orden de congelación que impidió su embarque, siendo entonces necesario obtener un permiso para hacer el embarque; que dicho permiso fué más tarde obtenido por la demandada y que el compresor no llegó

a Puerto Rico hasta fines del mes de mayo de 1943; que aun entonces faltaba una prioridad para poder hacer la instalación total del equipo de refrigeración y que no fué hasta poco antes del 29 de noviembre de 1943 que dicha prioridad fué obtenida. Es cierto que después de esa fecha la demandada escribió tres cartas a la demandante urgiéndole la instalación del equipo, pero la declaración del Sr. Megwinoff, miembro de la firma demandante, nos convence de que dado el estado de guerra existente para aquel entonces no fué posible actuar con la rapidez que se hubiera deseado. Oigamos parte de su declaración: "... Ese compresor llegó a Puerto Rico en los últimos días de mayo... del 1943. Yo tengo el giro que se pagó al banco y los papeles de embarque de ese compresor. Durante todo este tiempo el negocio de Megwinoff & Lefranc se había disuelto por las condiciones actuales en la isla en aquel momento, que no nos permitían seguir el negocio. Teníamos pérdidas. De manera que el socio mío, Lefranc, se retiró del negocio. Yo tuve que hacerme cargo de todos los compromisos que habíamos hecho para seguir dando servicio a las instalaciones. Además, a pesar de que había pérdidas en ese tiempo y que también habíamos perdido personal, yo mismo estaba siendo llamado por el ejército, como hasta recientemente lo he sido, hasta febrero 22 de este año (1945) fué la última llamada que me han dado, que he tenido que dejar todo el trabajo, olvidando todo lo que estoy haciendo para ir a tomar el examen físico. De manera que todas esas cosas dilataron considerablemente la ejecución de los diferentes contratos que uno tiene.

" " *       *       *       *       *       *       *

"También en esa fecha fué cuando se agudizó más el uso del gas freón, que es el gas que se usa más en este sistema, y a pesar de que estaba muy restringido esta instalación está diseñada para usar ese gas, de manera que esa parte está obviada pues el gas no lo había por meses distintos aquí, de manera que no podía ponerse a funcionar un sistema cuando

no teníamos el refrigerante y para eso teníamos que tener existencia de gas, y por varios meses estuvimos sin ningún refrigerante, como muchos sistemas de refrigeración que se pararon por completo en lo que se resumieron los embarques.''

El testimonio de Megwinoff no fué controvertido en forma alguna y considerado éste la demora habida no nos parece irrazonable, dadas las circunstancias que mediaron, especialmente tomando en consideración el estado de guerra porque entonces atravesaba la nación americana, y aun el mundo entero.-

Empero, creemos además que debe tenerse muy en cuenta el hecho adicional de que en dos de marzo de 1944, sin que se hubiera hecho por ella protesta en forma alguna al efecto de que no se aceptaría el equipo, de que se rescindiría el contrato o de que se solicitarían daños y perjuicios, la demandada escribió a la demandante diciéndole, según ya hemos indicado, que ''si el miércoles próximo, día 8 del corriente, ustedes no han empezado el trabajo contratado entregaremos el asunto a nuestros abogados para la acción pertinente.'' Los términos de esta carta equivalieron indudablemente a una aceptación por parte de la demandada de la situación hasta entonces existente y a la concesión a la demandante de una prórroga que vencería el 8 de marzo de 1944. Si de acuerdo con prueba no refutada el trabajo de instalación del equipo tardó de dos a tres meses y el mismo fué terminado en 5 de mayo de 1944, es lógico presumir que dicho trabajo fué iniciado a más tardar el 5 de marzo del indicado año, o sea dentro del término fijado a la demandante por la demandada.

Además, es bueno hacer constar que el equipo fué instalado en la fábrica de la demandada sin protesta de clase alguna por ella; que en 5 de mayo de 1944 se le pasó una cuenta cobrándole los $500 restantes; que en 29 del mismo mes se le dirigió una carta exigiéndole el pago de la indicada suma; que en 7 de julio del mismo año se insistió por tercera

vez por la demandante en el pago de la referida cantidad; y que en 4 de agosto siguiente se insistió por cuarta vez, por escrito, en que la demandada pagara el balance adeudado. A ninguna de estas cuatro comunicaciones contestó en modo alguno la Sunland Biscuit Co. Fué tan sólo en su contestación a la demanda que ella levantó la cuestión de que la demandante violó el contrato por no haber hecho la instalación del frigorífico hasta dos años 2 meses y 28 días después de haberse firmado el contrato y fué tan sólo entonces que se planteó la cuestión de los supuestos daños y perjuicios sufridos por la demandada. Esto nos parece más bien lo que en inglés se conoce como un *afterthought,* es decir, como algo que se le ocurrió a la demandada después que los hechos habían transcurrido. En adición a poderse considerar como una prórroga, la carta de dos de marzo a que nos hemos referido equivalió también a una renuncia de cualquier derecho que la demandada pudiera tener hasta entonces contra la demandante.

No sólo porque dadas las circunstancias que mediaron la demandante actuó dentro del más breve tiempo posible, sino también porque la demandada prorrogó el término para la instalación del equipo, porque renunció a cualquier derecho que pudiera tener y porque recibió dicho equipo sin protesta de clase alguna, entendemos que la demandante dió cumplimiento al contrato celebrado y tiene por ende derecho a recobrar la cantidad que se le adeuda.(¹)

*Debe confirmarse la sentencia apelada.*

---

(¹)*Cf. G. H. Hammond Company* v. *Diego Agüeros & Co.,* 30 D.P.R. 610 y *Topeka Flour Mill Co.* v. *S.I. La Constancia,* 39 D.P.R. 622.